J-S44001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES EDMONDS | |
| Appellant | No. 1747 WDA 2013 |

Appeal from the Judgment of Sentence February 20, 2013
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0007411-2012

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                          **FILED JULY 28, 2015**

Appellant James Edmonds appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas following his bench trial conviction for one count of attempted murder,[1] three counts of aggravated assault,[2] three counts of recklessly endangering another person ("REAP"),[3] and one count of conspiracy to commit aggravated assault.[4]  We affirm.

_____

[1] 18 Pa.C.S. § 901.

[2] 18 Pa.C.S. § 2702.

[3] 18 Pa.C.S. § 2705.

[4] 18 Pa.C.S. § 903.

The trial court set forth the relevant facts and procedural history of this matter as follows:

At approximately 1:00 p.m. on April 14, 2012[,] William Bosley pulled into the carport of the Carnegie Towers, Carnegie Borough, Allegheny County, Pennsylvania. He was driving a green car. His cousin, Tyler Dorsey, and a young child were sitting in the back seat. Security videos taken by the Carnegie Towers showed a second vehicle driven by [Appellant]. The vehicle was in front of Bosley's such that Bosley could not drive past. [Appellant] exited the driver's side, and the co-defendant, Byron Hall, exited the passenger side of the second vehicle. [Appellant] was next seen approaching the shooter[5] and greeting him with a "fist bump". The co-defendant, Byron Hall, was seen in the video at the left, behind the trunk of Bosley's car. The security video also showed the co-defendant grab the victims' car door so the victims could not exit, as Mr. Watson began to shoot. Next, [Appellant] is seen calmly walking as the two (2) men and child in the car are shot.

[Appellant] was arrested and originally charged with [c]riminal [a]ttempt [h]omicide, two (2) counts of [a]ggravated [a]ssault, three (3) counts of [REAP] and [c]onsipracy and an additional count of [a]ggravated [a]ssault was added before trial. After a non-jury trial, [Appellant] was found guilty on all counts.

Trial Court Pa.R.A.P. 1925(a) Opinion, October 28, 2014 ("1925(a) Opinion"), pp. 2-3 (internal record citations and footnotes omitted). The trial court sentenced Appellant to a term of 7 to 14 years' incarceration for the attempted murder conviction and concurrent terms of 3 to 6 years' incarceration for each of the aggravated assault convictions. The court

---

[5] The shooter exited the Carnegie Towers' front door into the carport at the same time Appellant and the other co-defendant exited the vehicle.

imposed no further penalty on the remaining convictions. Appellant filed a timely post-sentence motion and an amended post-sentence motion, which the court denied on October 7, 2013. Appellant timely filed his notice of appeal on October 29, 2013. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

I. Did the [t]rial [c]ourt err as a matter of law in determining that there was sufficient evidence to convict [Appellant] of the charged offenses?

II. Did the [t]rial [c]ourt err as a matter of law in denying the [m]otion for a [n]ew [t]rial due to the [v]erdict being against the [w]eight of the [e]vidence?

Appellant's Brief, p. 1.

Appellant first claims that the Commonwealth adduced insufficient evidence to support his convictions. *See* Appellant's Brief, pp. 7-. Specifically, Appellant claims the evidence presented did not prove beyond a reasonable doubt that he participated in the commission of the crimes. *See id.* Appellant argues the surveillance video merely shows him engaging in a common greeting with the shooter prior to the shooting. *Id.* Accordingly, he argues he was merely present at the scene. *Id.* This claim lacks merit.

When examining a challenge to the sufficiency of evidence, this Court's standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the

- 3 -

crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa.Super.2014).

Under the Pennsylvania Crimes Code, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S. § 901(a). Therefore, "[i]f a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder." *In re R.D.*, 44 A.3d 657, 678 (Pa.Super.2012). Further, our Supreme Court has repeatedly determined that "[t]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill" required for a first degree murder conviction. *Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa.2007); *see also Commonwealth v. Cousar*, 928 A.2d 1025, 1034 (Pa.2007) ("a specific intent to kill may be inferred from the use of a deadly weapon on a vital part of a victim's body.").

Regarding aggravated assault, the Crimes Code provides, in relevant part:

**(a) Offense defined.–**A person is guilty of aggravated assault if he:

(1) Attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S. § 2702. The statute further defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "[T]he Commonwealth may establish the *mens rea* element of aggravated assault with evidence that the assailant acted either intentionally, knowingly, or recklessly." ***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa.Super.2007). "Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." ***Commonwealth v. Lewis***, 911 A.2d 558, 564 (Pa.Super.2006). However, "where [a] victim suffers serious bodily injury, the Commonwealth need not prove specific intent [but] need only prove [the assailant] acted recklessly under circumstances manifesting an extreme indifference to the value of human life." ***Commonwealth v. Nichols***, 692 A.2d 181, 185 (Pa.Super.1997). The manner and means of an attack will be considered in determining whether the requisite degree of recklessness has

been proven. *Bruce*, 916 A.2d at 664. Where an assailant performs an offensive act that almost assures that injury will ensue, the requisite degree of recklessness has occurred for the purposes of aggravated assault. *Bruce*, 916 A.2d at 664 ("at very least, the conduct must be such that that one could reasonably anticipate death or serious bodily injury would likely and logically result"); *Nichols*, 692 A.2d at 185.

The Crimes Code defines REAP thusly:

> A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S. § 2705. "[REAP] is a crime directed against reckless conduct entailing a serious risk to life or limb out of proportion to any utility the conduct might have." *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa.Super.2014), *appeal denied*, 102 A.3d 985 (Pa.2014) (internal quotations and citation omitted). "As a result, to support a [REAP] conviction, the evidence must establish that the defendant acted recklessly in a manner that endangered another person." *Id.*; 18 Pa.C.S. § 2705. "A person acts in a reckless manner when he consciously disregards a substantial and unjustifiable risk." *Id.*; 18 Pa.C.S. 302(b)(3).

"The material elements of conspiracy are: "(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy." *Commonwealth v. Gross*, 101 A.3d 28, 34 (Pa.2014); 18 Pa.C.S. § 903. "An 'overt act' means an act done

in furtherance of the object of the conspiracy." *Id.* The overt act necessary to establish criminal conspiracy need not be committed by the defendant; it need only be committed by a co-conspirator. *Commonwealth v. McCall*, 911 A.2d 992, 996 (Pa.Super.2006).

Further, this Court has explained the agreement/intent elements of conspiracy as follows:

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*McCall*, 911 A.2d at 996-97. The factors of the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode, "may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail." *Commonwealth v. Bricker*, 882 A.2d 1008, 1017 (Pa.Super.2005). Finally, "[e]ach co-conspirator is liable for the actions of the others if those actions were in furtherance of the common criminal design." *Commonwealth v. King*, 990 A.2d 1172, 1178

(Pa.Super.2010) (*citing* **Commonwealth v. Baskerville**, 681 A.2d 195, 201 (Pa.Super.1996)).

Further, the Crimes Code discusses accomplice liability in pertinent part as follows:

> **(a) General rule.–**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.
>
> **(b) Conduct of another.–**A person is legally accountable for the conduct of another person when:
>
> . . .
>
> (3) he is an accomplice of such other person in the commission of the offense.
>
> **(c) Accomplice defined.–**A person is an accomplice of another person in the commission of an offense if:
>
> (1) with the intent of promoting or facilitating the commission of the offense, he:
>
> (i) solicits such other person to commit it; or
>
> (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
>
> (2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S. § 306. To find a defendant guilty as an accomplice, a two-prong test must be satisfied. **Commonwealth v. Kimbrough**, 872 A.2d 1244, 1251 (Pa.Super.2005) (citing **Commonwealth v. Murphy**, 844 A.2d 1228, 1234 (Pa.2004)).

> First, there must be evidence to show that [the defendant] intended to facilitate or promote the underlying offense. Second, there must be evidence that [the defendant] actively

participated in the crime or crimes by soliciting, aiding, or agreeing to aid the principal [].

*Kimbrough*, 872 A.2d at 1251 (internal citation omitted). "Both requirements may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid." *Commonwealth v. Knox*, 50 A.3d 749, 755 (Pa.Super.2012).

> To establish complicity, mere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient. Nor is flight from the scene of a crime, without more, enough. However, those factors combined, along with other direct or circumstantial evidence may provide a sufficient basis for a conviction, provided the conviction is predicated upon more than mere suspicion or conjecture.

*Id.* at 756 (citing *Commonwealth v. Rosetti*, 469 A.2d 1121, 1123 (Pa.Super.1983)).

Here, the surveillance video of the incident showed Appellant and his co-defendant arrive at the Carnegie Towers' carport together in a vehicle driven by Appellant before the victims arrived. Appellant parked his vehicle such that it essentially blocked forward exit from the carport and waited. Appellant and the co-defendant made multiple beckoning hand motions to an off-screen individual prior to the victims' arrival. The victims' vehicle arrived and parked directly behind them. Immediately after the victims' vehicle stopped, Appellant and the co-defendant exited their vehicle just as the third co-defendant – the shooter – appeared from the front door of the building.

All three men made eye contact, and Appellant greeted the shooter with a fist bump as the co-defendant passenger made his way to the driver's side of the victims' vehicle. As the victims' vehicle began to back away, the co-defendant held the door shut while the shooter approached and opened fire into the vehicle. Appellant initially ducked slightly at the shots and continued toward the entrance of Carnegie Towers, but calmly returned outside while the shooting was still in progress. After the shooting, Appellant and the co-defendant calmly watched as the shooter ran past them. Neither Appellant nor the co-defendant showed any alarm at the shooter's proximity.

When viewed in the light most favorable to the Commonwealth this evidence established beyond a reasonable doubt the elements of attempted murder, aggravated assault, and REAP as an accomplice, as well as conspiracy to commit aggravated assault. Accordingly, Appellant's sufficiency of the evidence claim fails.

Appellant next claims that the verdict was against the weight of the evidence. *See* Appellant's Brief, p. 11-14. Appellant bases this claim on the lack of direct evidence proffered by the Commonwealth of Appellant's intent.[6] *See id.* He is again incorrect.

_____

[6] Appellant's weight of the evidence claim merely argues that the verdict was against the weight of the evidence because the Commonwealth's evidence failed to prove the crimes beyond a reasonable doubt. This is actually a restatement of his sufficiency claim, which fails for the reasons discussed
*(Footnote Continued Next Page)*

The denial of a new trial based on a lower court's determination that the verdict was not against the weight of the evidence is one of the least assailable reasons for granting or denying a new trial. ***See Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa.2013). This Court reviews weight of the evidence claims pursuant to the following standard:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa.2000) (internal citations, quotations, and footnote omitted).

Stated differently, a court may award a new trial because the verdict is against the weight of the evidence only when the verdict is so contrary to

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

***supra***. However, as it is easily disposed of for the reasons stated ***infra***, we will address Appellant's claim as though he had argued a proper weight of the evidence claim.

the evidence as to shock one's sense of justice,[7] "such that right must be given another opportunity to prevail." ***Commonwealth v. Goodwine***, 692 A.2d 233, 236 (Pa.Super.1997). Moreover, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. ***Widmer***, 744 A.2d at 753. When reviewing the trial court's determination, this Court gives the gravest deference to the findings of the court below. We review the court's actions for an abuse of discretion. ***Id.***

Simply stated, the trial court's verdict in this matter illustrates that the court reviewed the surveillance video – to which Appellant offered no contradictory evidence – and found that it credibly evidenced Appellant's participation in the crimes, as discussed ***supra***. The trial court confirmed its assessment/verdict by denying Appellant's post-sentence motion for a new trial based on the weight of the evidence. Nothing about the verdict shocks

_____

[7] This Court has explained the notion of "shocking to one's sense of justice" as follows:

> When the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa.Super.2004) (internal citations and quotations omitted).

the conscience. Thus, Appellant's weight of the evidence claim warrants no relief.

For the preceding reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/28/2015